IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSPEH BALL,<br>      Petitioner, | ) <br> ) <br> ) | Civil Action No. 09-220 Erie |
| v. | ) <br> ) | District Judge Sean J. McLaughlin <br> Magistrate Judge Susan Paradise Baxter |
| FRANCISCO J. QUINTANA, et al., <br>       Respondents. | ) <br> ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**      **RECOMMENDATION**

It is respectfully recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.**      **REPORT**

Before the Court is Joseph Ball's Writ Of Habeas Corpus [ECF No. 3], which he has filed pursuant to 28 U.S.C. § 2254. He contends that his parole revocation hearing, which was conducted by the Pennsylvania Board of Probation and Parole (the "Board") on June 15, 2007, was untimely under 37 Pa.Code § 71.4 because it was held outside of the 120-day time limit set forth therein. That section of the Pennsylvania Code governs the timeliness of a parole revocation hearing and it provides, in relevant part:

> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
> (1) A revocation hearing shall be held **within 120 days from the date the Board received official verification of the plea of guilty** or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

1

> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with Commonwealth ex rel. Rambeau v. Rundle, 455 Pa. 8, 314A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.
>
> (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the Rambeau decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

### A.     Relevant Background

The Commonwealth Court of Pennsylvania summarized the relevant facts of this case as follows:

> Ball was paroled in April 1998 from a sentence of 9-1/2 to 21 years imposed in 1986 for convictions of multiple counts of robbery and possession of an instrument of crime. On January 22, 2002, Board agents arrested Ball upon their discovery of weapons, ammunition, narcotics and drug paraphernalia at his Philadelphia residence. He was held in state custody on a Board detainer at SCI-Graterford and later at SRCF-Mercer. On March 23, 2002, Ball was charged in Philadelphia with possession with intent to deliver controlled substances, carrying a firearm without a license, possession of firearms by a known felon, forgery and possession of drug paraphernalia. He requested a continuance at his June 12, 2002 parole violation hearing, which the Board granted with a designation "To await disposition of all outstanding criminal charges." Certified Record (C.R.) at 106.
>
> On September 12, 2002, Ball was indicted by a federal grand jury on charges [at United States v. Ball, No. 2:02-cr-558 (E.D. Pa.)] related to possession with intent to distribute cocaine, possession of marijuana, possession of a firearm in furtherance of a drug trafficking crime, felon in possession of a firearm and ammunition and possession of counterfeit obligations and securities. In view of the federal indictment, all state charges were *nolle prosequied* on September 27. Ball appeared before a federal magistrate for arraignment ten days later, and he subsequently was detained pending trial at the Philadelphia federal detention center. On November 19, 2003, Ball entered into a plea agreement, which was filed with the federal district court on January 12, 2004.
>
> On January 15, 2004, Ball was returned to SCI-Graterford with an order to appear before a federal judge (now deceased Judge Herbert J. Hutton) for a sentencing hearing on May 6, 2004. The sentencing hearing was postponed several times, however, and the

case was reassigned to Judge Bruce W. Kauffman. An e-mail sent by parole supervisor Elda Casillas on March 14, 2006 stated: "[Assistant U.S. Attorney Mark S. Miller] informed me that for confidential reasons this case has been dragging for a very long time and that is all he was able to share with me." C.R. at 87. On March 26, 2007, Judge Kauffman accepted the plea agreement and sentenced Ball to 96 months of imprisonment. Following a revocation hearing on June 15, 2007, the Board recommitted Ball as a convicted parole violator when available to serve 24 months backtime.

In his request for administrative relief, Ball alleged that the Board failed to provide a timely revocation hearing. By response mailed November 20, 2007, Board Secretary Cynthia L. Daub denied his request as follows:

> A review of the record reflects that: **(a) you were returned to a state correctional institution prior to your conviction, (b) the Board received official verification of your conviction on April 5, 2007, and (c) the revocation hearing was held on June 15, 2007. Therefore, the revocation hearing was timely pursuant to 37 Pa. Code § 71.4 because it was held only 71 days after the date the Board received official verification of your conviction.** See Morgan v. Pennsylvania Board of Probation and Parole, 814 A.2d 300 (Pa. Commw. 2003); Taylor v. Pennsylvania Board of Probation and Parole, [931 A.2d 114 (Pa. Comwlth. 2007)].

C.R. at 122 (emphasis added; footnote omitted).

Ball v. Pennsylvania Board of Probation and Parole, No. 2210 C.D. 2007, slip op. at 1-3 (Pa.Commw. Aug. 14, 2008).[1]

Ball appealed the Board's decision to the Commonwealth Court. The court appointed a public defender to represent him. Ball, through counsel, argued that his parole revocation sentence should be stricken because the Board held the hearing outside of the time limit set forth in 37 Pa.Code § 71.4. Specifically, he contended "that the June 15, 2007 revocation hearing was untimely because it was held more than 120 days after he was released from federal custody and returned to SCI-Graterford on January 15, 2004; he remained in continuous state custody until the June 15 hearing." Ball, No. 2210 C.D. 2007, slip op. at 3. To support his argument, Ball contended, as he does in the instant federal

---

[1] The Commonwealth Court's Memorandum Opinion is attached to this Report and Recommendation.

3

habeas case, that Hearing Examiner Randolph Parker confused the conviction date with the sentencing date of March 26, 2007. He pointed out that Supervisor Marianne Snider from the Mercer County parole office testified that her records indicated a guilty verdict date of January 12, 2004. Although Snider testified that the official verification date was April 5, 2007, Ball noted that she offered "no testimony or records as to the date the Board received the guilty plea" and that she did not enter "any documents acknowledging a verification date of April 5, 2007." Id. at 4, quoting Petitioner's Brief at 8. Snider also testified that on May 7, 2007, she queried by e-mail Ball's parole supervisor Jose A. Alvarado and parole agent Nailah Johnson why the hearing was being held three years after Ball's conviction, but she received no response. Ball argued that Snider's inquiry, made one month after the "alleged" verification date, and the subsequent lack of response "casts doubt on Ms. Snider's assertion that official verification of conviction was received on April 5, 2007." Id. at 5, quoting Petitioner's Brief at 9.

On August 14, 2008, the Commonwealth Court issued a Memorandum Opinion in which it affirmed the Board's decision and rejected Ball's factual contentions. It held:

> Pursuant to 37 Pa. Code § 71.4(1), the Board must hold a revocation hearing within 120 days of official verification of the parolee's conviction. Official verification is defined in 37 Pa. Code §61.1 as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." The record reflects that Ball was convicted of the federal charges on March 26, 2007; **that the Board received official verification on April 5, 2007**; and that Ball's hearing was held on June 15, 2007. **The hearing was timely because it was held within 71 days from the date of official verification and 80 days following the convictio**n.
>
> The Board argues that it could not have held a revocation hearing within 120 days after the filing of the plea agreement in January 2004 because a guilty plea is not in and of itself a conviction. For a conviction to occur, the court must accept the guilty plea and adjudicate the defendant guilty. The Board cites Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure, which provides that once a plea agreement is filed with the court it may "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Here, the plea agreement was not accepted by the court until March

4

26, 2007 when Ball was sentenced on his federal conviction.  To bolster its argument, the Board points out that the March 26, 2007 order uses the present tense in stating the following: "The defendant is adjudicated guilty of these offenses."  C.R. at 80.  Had it accepted Ball's guilty plea earlier, the court's order would reflect such fact; the order also indicates that "Date of Imposition of Judgment" is March 26, 2007.  Id.  **Even assuming *arguendo* that the conviction occurred earlier, the Board, in any event, received official verification on April 5, 2007, and the hearing was timely.  The record includes a Criminal Arrest and Disposition Report (Report) on Form 257-C, which provides April 5, 2007 as the date of official verification**.

     The Court concludes that the Board met its burden of proving that Ball's June 15, 2007 hearing was timely because it was held within 120 days of official verification of his conviction.  Vanderpool [v. Pennsylvania Board of Probation and Parole, 874 A.2d 1280 (Pa. Commw. 2005)].  Snider testified that the official verification date was April 5, 2007, which was supported by the Report containing signatures of Ball's parole agent Johnson and supervisor Alvarado, bearing the date May 16, 2007. Ball's argument that the official verification date lacked evidentiary support therefore is without merit.  Also, the Court rejects Ball's insinuation that the official verification date was fabricated: the fact that Johnson did not explain to Snider the three-year delay that occurred in a federal court proceeding does not support a charge of fraud.  Further, the hearing was timely where it was held 80 days following Ball's conviction.  Notwithstanding the filing of the plea agreement on January 12, 2004, Ball's guilty plea became final on March 26, 2007 when it was accepted by the federal district court.  See Fed. R. Crim. P. 11(c)(3)(A).

     Ball attempts to characterize his detainment at the Philadelphia federal detention center from October 2002 to January 2004 for purposes of arraignment and trial as "confinement outside the jurisdiction of the Department of Corrections" under Section 71.4(1)(i), such that his return to SCI-Graterford on January 15, 2004 triggered the start of the 120-day period.  However, the rule under Section 71.4(1)(i) is an exception to the general requirement of a revocation hearing to be held within 120 days of official verification of conviction.  The Court has held that conviction occurred here on March 26, 2007; therefore, Section 71.4(1)(i) is inapplicable as there was no conviction upon which to hold a revocation hearing when Ball was returned to SCI-Graterford on January 15, 2004.  Additionally, Ball's argument regarding [parole] supervisor Casillas' prior knowledge of the existence of his plea agreement is irrelevant. See *Vanderpool* (holding that official verification triggered 120-day period, not Board's earlier knowledge of conviction). Because the Board committed no error of law or abuse of discretion, the Court affirms.

Id. at 6-8 (emphasis added).  The Supreme Court of Pennsylvania issued an order denying Ball's petition for allowance of appeal on March 24, 2009.

Having had no success before the state court, Ball commenced the present action pursuant to 28 U.S.C. § 2254, which requires that, in order to be entitled to federal habeas relief, Ball must show that he is in custody in violation of the Constitution of the United States. Before this Court may consider his federal constitutional claim on the merits, however, Ball first must show that he presented that same federal constitutional claim to the state appellate courts. 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). In the event that the state court denied Ball's federal constitutional claim on the merits, he would only be entitled to federal habeas relief upon a showing that the state court's adjudication was "contrary to" or an "unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, pursuant to § 2254(e)(1), the state courts' factual findings are presumed correct and Ball has the burden of rebutting this presumption by clear and convincing evidence.

### B. Discussion

Ball claims that he is entitled to federal habeas relief because the Board held his parole revocation hearing outside of the time limit set forth in 37 Pa.Code § 71.4. This claim is one of state law error, which is not cognizable in federal habeas. As set forth above, this Court is limited to deciding whether Ball's state confinement is violative of the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error.[2] See, e.g., Estelle v. McGuire, 502 U.S.

---

[2] It is worth noting that Ball cannot establish that any state law has been violated. The Commonwealth Court found as fact that the Board received official verification of Ball's conviction on April 5, 2007. Ball, No. 2210 C.D. 2007, slip op. at 6. That finding is entitled to deference in this Court. 28 U.S.C. § 2254(e)(1). Thus, as explained in the Commonwealth Court's decision, since § 71.4's requirement that the Board conduct a parole revocation hearing within 120 days does not begin to run

6

62, 67-68 (1991); In re Brown, 382 F.App'x 150, 151 n.1 (3d Cir. 2010) ("To the extent that Brown is claiming a violation of 37 Pa.Code § 71.4, a claim based on an erroneous application of state law is not cognizable in federal court.").

To the extent that Ball is arguing that the failure to conduct a hearing within 120 days violated his procedural due process rights, see Morrissey v. Brewer, 408 U.S. 471 (1972),[3] that claim would fail because it does not appear that he exhausted a due process claim in state court. See Ball, No. 2210 C.D. 2007, slip op. at 3-5 (summarizing the claims that Ball raised before the Commonwealth Court); ECF No. 3 at ¶ 12(b) (where Ball answers "N/A" to the question of whether he exhausted his habeas claim in state court). See also Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (explaining ways in which a petitioner can "fairly present" a federal constitutional claim in state court); see also Szuchon v. Lehman, 273 F.3d 299, 322-24 (3d Cir. 2001). Therefore, if Ball in fact is raising a due process claim here, it is procedurally defaulted. See, e.g., Lines v. Larkins, 208 F.3d 153, 159-60 (3d Cir. 2000).

A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman v. Thompson, 501 U.S. 722, 750, 753 (1991); see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).[4] As the Third Circuit Court has stated:

---

until the date the Board receives official verification of the parolee's conviction, which in this case was April 5, 2007, Ball's June 15, 2007, revocation hearing was timely.

[3] In Morrissey, the Supreme Court held that a parolee has a right to a hearing to determine if he has violated the terms of his parole. The hearing must be held within "a reasonable amount of time after the parolee is taken into custody." Morrissey, 408 U.S. at 488.

[4] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. [Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).] Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486, 106 S.Ct. 2639.

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002). Ball points to no evidence that establishes cause for his default or prejudice stemming therefrom.

Finally, if this Court could consider a due process claim on the merits, it would be denied. In order to establish a due process violation, a parolee must demonstrate that he suffered delay that was prejudicial, which Ball has not done. For example, he has not shown that he was incarcerated for a longer period of time than he otherwise would have been had he had a parole revocation hearing earlier. In addition, he pleaded guilty to federal criminal charges, and a criminal conviction conclusively establishes a parole violation. See Morrissey, 408 U.S. at 490.

Based upon all of the foregoing, Ball's Petition For Writ Of Habeas Corpus should be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should

---

constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. This is not one of the rare cases in which the fundamental miscarriage of justice rule is implicated.

8

issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying these standards here, jurists of reason would not find it debatable whether the petition should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 13, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge